## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**JERIN B. WRIGHT**                                                    **CIVIL ACTION**

**VERSUS**                                                                  **NO. 24-504-RLB**

**CHARLES PELLETIER**                                             **CONSENT**

### <u>ORDER</u>

Before the Court is Defendant's Motion to Dismiss. (R. Doc. 7). The deadline for filing an opposition has expired. LR 7(f). Plaintiff has also filed a Motion for Discovery of Evidence (R. Doc. 11) to which no opposition was filed. Finally, also pending are Defendant's Motion to Stay Discovery (R. Doc. 12) and Plaintiff's Motion for Leave to File Exhibit Conventionally (R. Doc. 13). The deadline for filing oppositions with respect to these motions has not expired. LR 7(f).

### I.    Background

On June 20, 2024, Jerin B. Wright ("Plaintiff" or "Wright"), who is proceeding *pro se*, commenced this civil rights action pursuant to 42 U.S.C. § 1983, naming as the sole defendant Lieutenant Charles Pelletier ("Defendant" or "Pelletier"). (R. Doc. 1). In the Complaint, Wright alleges that, on the evening of February 22, 2024, Pelletier "along with a supervisor and another deputy profiled [and] deprived him of his right to life, liberty, property and the pursuit of happiness." (R. Doc. 1 at 4). Wright alleges that he sustained physical and mental damages as a result of the interaction and seeks the recovery of $1 million. (R. Doc. 1 at 6). Wright describes the incident as follows:

> This situation began at 4851 O'Neal Ln, Baton Rouge, LA 70817 (Circle K gas station) from there Lieutenant Charles Pelletier followed Jerin b Wright to 5136 Berryvllle CT, Baton Rouge, LA 70817, the defendants Home.
>
> Lieutenant Pelletier profile Jerin b Wright followed him home. I acknowledged Pelletier while traveling with eye contact and hand signal parked on my property

and proceeded to greet Mr. Pelletier. I said "how are you officer I mean you no disrespect and no harm, but I did not commit a crime and have done nothing wrong. Mr. Pelletier replied, "your right do you want to know why I stopped you?" I replied "no, I mean you no disrespect I only want to go inside and continue about my evening. I went to my automobile got the information to show him case law. Pelletier said he didn't want to see it he's waiting on his supervisor said he's detaining me. I then said I've been through this before. I walk to my doorway opened the door told Breana Dotson to please record this. Closed the door to continue trying to respect Pelletier. While talking to Pelletier the Supervisor along with a Deputy walked up told me to come from under the carport. I replied no he has his taser out I don't feel safe I'm going inside. Supervisor takes his glasses off and says "you coming out here" while taking his spectacles off and placing them on the trunk of my automobile while aggressively moving forward telling his other to officers to not let me go inside. Deputy deployed his taser, striking me in the chest and leg. I went inside franticly closing the door but not having time to lock it. All three officers burst through the closed door deployed another taser striking me directly in the spine to immobilize and handcuff me. They picked me up sat me on my lawn.

For most of my neighbors to see. An officer explained he would take the tasers out my body, he did. I got up as officers told me to go to his automobile. I remained there until the door opened and Breana Dotson was there to explain that the officers said they would let me go after they finished towing my automobile if I stayed calm. I replied, "I've been calm and okay. I sat In the back of the sheriff's automobile until two officers came to open the door. I got out of the automobile, they uncuffed me while Breana Dotson spectated. I walked away to what I considered to be a safe place closed my garage and that was the last time I saw Lieutenant CHARLES PELLETIER until I showed up pro per on the 22nd day of February 2024.

(R. Doc. 1 at 4-5) (spelling and punctuation in the original).

On August 30, 2024, Pelletier filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, seeking dismissal because (1) Wright seeks liability based on the Declaration of Independence (as opposed to the U.S. Constitution or laws of the United States); (2) Pelletier is entitled to qualified immunity to the extent sued in his individual capacity; and (3) Wright does not otherwise state a claim to establish that Pelletier is liable in his official capacity. (R. Doc. 7). Wright did not timely oppose this motion. *See* LR 7(f).

On September 30, 2024, Wright filed a Motion for Discovery of Evidence. (R. Doc. 11). Through this motion, Wright raises additional allegations (including claims pursuant to the

Fourth and Fifth Amendments of the U.S. Constitution) and seeks consideration of (1) ten attached photographs of his injuries and the discharged taser cartridge and (2) video recordings of Breana Dotson. (R. Doc. 11). Wright separately seeks leave to file conventionally into the record the video recording of Breana Dotson, as well as what appears to be a video recording of Wright's own testimonial regarding his injuries. (R. Doc. 13). As discussed below, the Court will consider Plaintiff's representations in these filings in the context of determining whether to grant Pelletier's Motion to Dismiss.

On October 4, 2024, Pelletier filed a Motion to Stay Discovery. (R. Doc. 12). Pelletier seeks a stay of discovery until a ruling is obtained on his qualified immunity defense.

## II.    Law and Analysis

### A.    Standard for *Pro Se* Litigants

*Pro se* pleadings are to be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (recognizing the established rule that this court "must construe [a *pro se* plaintiff's] allegations and briefs more permissively"). Furthermore, a court must liberally construe a *pro se* complaint, taking all well-pleaded allegations as true. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (per curiam). Nevertheless, "a *pro se* litigant is not exempt ... from compliance with relevant rules of procedural and substantive law." *NCO Fin. Systems, Inc. v. Harper–Horsley*, No. 07-4247, 2008 WL 2277843, at *3 (E.D. La. May 29, 2008) (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981)). As such, a *pro se* plaintiff's complaint "must set forth facts giving rise to a claim on which relief may be granted." *Johnson*, 999 F.2d at 100 (citation omitted).

Additionally, "[a] liberal reading of plaintiff's pleadings is the only special treatment afforded *pro se* plaintiffs by the courts." *Kiper v. Ascension Parish Sch. Bd.*, No. 14-313, 2015

WL 2451998, at *1 (M.D. La. May 21, 2015) (citing *Callahan v. C.I.R.*, No. 99-0295, 2000 WL 1141607, at *1 (M.D. La. Apr. 10, 2000)). A "court is not required to search for or try to create causes of actions or find material issues of fact for *pro se* plaintiffs." *Id.* Finally, "a *pro se* litigant is not entitled to greater rights than would be a litigant represented by a lawyer." *NCO Fin. Systems*, 2008 WL 2277843, at *3 (citing *Birl*, 660 F.2d at 593).

### B.    Defendant's Motion to Dismiss (R. Doc. 7)

#### 1.    Legal Standards

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a Rule 12(b)(6) motion, a pleading's language, on its face, must demonstrate that there exists plausibility for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In determining whether it is plausible that a pleader is entitled to relief, a court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim. *Twombly*, 550 U.S. at 557. Factual assertions are presumed to be true, but "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678. In reviewing a Rule 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

In most circumstances, a court should allow a plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust*

*Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (plaintiffs are generally given one chance to amend before dismissal unless "it is clear that the defects are incurable"). However, a court should deny leave to submit futile amendments that are "insufficient to state a claim." *Jamieson v Shaw*, 772 F.2d 1205, 1209 (5th Cir. 1985).

### 2.    Failure to State a Claim under 42 U.S.C. § 1983

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, custom, or usage . . ., subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and [federal] laws, shall be liable to the party injured." 42 U.S.C. § 1983. To state a claim under Section 1983, "a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Lauderdale v. Texas Dep't of Criminal Justice*, 512 F.3d 157, 165 (5th Cir. 2007) (internal quotation marks and citation omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

Here, Pelletier seeks dismissal of Wright's Section 1983 claim because the Complaint states that Pelletier deprived Wright of his "right to life, liberty, property and pursuit of happiness," which Pelletier suggests is a paraphrasing of the Declaration of Independence. (R. Doc. 1 at 4). Pelletier is correct that a Section 1983 claim cannot be based on a violation of the Declaration of Independence, which is neither a federal law nor part of the Constitution. *See King v. St. Tammany Par. Prison,* No. 22-6198, 2023 WL 2534044, at *2 n.2 (W.D. La. Mar. 1, 2023), *report and recommendation adopted*, 2023 WL 2527887 (W.D. La. Mar. 15, 2023) (citing *Secor v. Oklahoma*, 2016 WL 6156316, at *4 (N.D. Okla. Oct. 21, 2016) ("To the extent that the plaintiff premises any § 1983 claim upon the Declaration of Independence, such a claim is not

recognized in the law.") (citing cases)); *see also Schifanelli v. U.S. Gov't*, 865 F.2d 1259 (4th Cir. 1988) ("The Declaration of Independence is a statement of ideals, not law.").

Nevertheless, the Court construes the language of the pro se Complaint liberally. In the Complaint, Wright asserts that he has been deprived of his "right to life, liberty, property and pursuit of happiness." (R. Doc. 1 at 4). The right to "property" is not an unalienable right specifically listed in the Declaration of Independence, which states, in relevant part: "We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness." The Declaration of Independence para. 2 (U.S. 1776). Wright's reference to his right to "life, liberty, [or] property" can be equally read as an invocation of his rights under the Fourteenth Amendment of the U.S. Constitution, which provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; *see also* U.S. Const. amend. V.

Furthermore, when read liberally, the Complaint attempts to set forth Section 1983 claims for false arrest and excessive force, which implicate the protections provided by the Fourth Amendment of the U.S. Constitution. *See Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007) ("In order to prevail in a § 1983 claim for false arrest, a plaintiff must show that he was arrested without probable cause in violation of the Fourth Amendment."); *Graham v. Connor*, 490 U.S. 386, 394 (1989) ("Where . . . the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person.") (citing U.S. Const. amend. IV).

In his own motions, which the Court interprets, in part, as attempts to oppose the Motion to Dismiss, Wright specifically seeks to invoke his rights under the Fourth Amendment. (*See* R.

Doc. 11 at 2) ("It is unclear why Lieutenant Pelletier along with his constituents felt the use of extreme life-threatening force which includes multiple tasers to seize jerin b wright and confiscate his property on the 22nd of February 2024 without Due Process of law. The Fourth Amendment of the [] United States Constitution states, the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly the place to be searched, and the persons or things to be seized.").

In sum, the Court construes the Complaint as seeking relief for false arrest and excessive force in light of the rights provided by the Fourth Amendment of the U.S. Constitution. Accordingly, Pelletier's Motion to Dismiss is denied to the extent it seeks dismissal of Wright's Section 1983 claim based solely on failure to plead a deprivation of a right secured by the Constitution or laws of the United States.

### 3.    Qualified Immunity – Individual Capacity Claims

"To survive a motion to dismiss in cases where the qualified immunity defense is raised, a plaintiff must state facts, which if proven, would defeat the defense." *Babb v. Dorman*, 33 F.3d 472, 475 n. 5 (5th Cir. 1994). The qualified immunity defense affords government officials not just immunity from liability, but immunity from suit." *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 525-26 (1985)). Qualified immunity shields government officials from individual liability for performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Here, Pelletier raises the qualified immunity defense in the context of arguing that the Complaint only raises vague and conclusory factual allegations against Pelletier regarding the

attempted traffic stop and does not otherwise allege that Pelletier was involved in the physical

arrest of Wright:

> According to Plaintiff's factual allegations, Lt. Pelletier conducted a traffic stop,
> Plaintiff acknowledged Lt. Pelletier but did not stop until he parked on his own
> property, Plaintiff denied doing anything wrong, and Plaintiff refused to cooperate
> and walked away. Plaintiff makes the vague and conclusory allegation that Lt.
> Pelletier "profiled" him, but he makes no specific allegations of how he was
> profiled, nor how it constitutes a constitutional violation. Plaintiff does not allege
> there was no probable cause for the traffic stop. Plaintiff claims a deputy deployed
> a Taser, striking Plaintiff. However, **Plaintiff does not allege Lt. Pelletier
> deployed his Taser.** Plaintiff does not make any specific factual allegations
> against Lt. Pelletier, outside of Lt. Pelletier conducting the traffic stop, and he
> does not contend Lt. Pelletier caused any of his alleged injuries. Plaintiff's
> allegations do not suggest Lt. Pelletier acted unreasonably under the
> circumstances. Therefore, to the extent Plaintiff asserts a constitutional violation,
> Lt. Pelletier is entitled to qualified immunity.

(R. Doc. 7-1 at 6) (emphasis added). In short, Pelletier argues that because the allegations in the

Complaint are limited to his attempt to conduct a traffic stop, the alleged acts do not violate

clearly established law.

The Complaint is not exactly clear with respect to what acts were allegedly conducted by

Pelletier as opposed to by the unidentified "Supervisor" and "Deputy" who later arrived on the

scene. That said, the Complaint specifically alleges that Pelletier profiled the plaintiff and

followed him to his home despite having done nothing wrong and having committed no crime.

Pelletier then detained the plaintiff until the arrival of other officers. After the plaintiff was

allegedly tased by the unidentified Deputy: "**<u>All three officers</u>** burst through the closed door

deployed **<u>another taser</u>** striking me directly in the spine to immobilize and handcuff me. They

picked me up sat me on my lawn." (R. Doc. 1 at 4) (emphasis added). Contrary to Pelletier's

assertions, the Complaint alleges that Pelletier was, after conducting a traffic stop and seizure of

the plaintiff without justification, involved in entering Wright's home by force in coordination

with other officers, tasing Wright with a second taser and/or handcuffing Wright, and taking

Wright out of his home and placing him in his front yard. Plaintiff has alleged not just injuries
due to the tasers but also injuries to his wrists and upper extremities.

Based on the foregoing, and viewing plaintiff's allegations in their most favorable light,
the Court will deny Pelletier's Motion to Dismiss based on qualified immunity at this pleading
stage.

### 4.    Official Capacity Claims

Finally, Pelletier seeks dismissal of any claims brought against him in his official
capacity because he is not a final decision maker or policy maker within the East Baton Rouge's
Sheriff's Office. (R. Doc. 7-1 at 6-7).

When Wright filed his "form" Complaint, he checked a box asserting that he is bringing
an "official capacity" claim against Pelletier. (R. Doc. 1 at 2). Notwithstanding this mark, the
body of the Complaint, as discussed above, supports a finding that Wright is really attempting to
raise an individual capacity claim against Pelletier.

A lawsuit "against a state official in his or her official capacity is not a suit against the
official but rather is a suit against the official's office." *Will v. Mich. Dep't. of State Police,* 491
U.S. 58, 71 (1989) (citation omitted). "To determine whether a public official is liable in his
official capacity, the Court looks to the jurisprudence discussing whether a municipality or local
government entity is liable under section 1983." *Romain v. Governor's Office of Homeland Sec.*,
No. 14-660, 2016 WL 3982329, at *6 (M.D. La. July 22, 2016) (citations and quotations
omitted). "To establish municipal liability under § 1983, a plaintiff must show the deprivation of
a federally protected right caused by action taken 'pursuant to an official municipal policy.'"
*Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (quoting *Monell*, 436 U.S. at 691, 98
S. Ct. 2018). To assert an official capacity claim, the plaintiff must allege "(1) an official policy
(or custom), of which (2) a policy maker can be charged with actual or constructive knowledge,

and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle*, 613 F.3d at 541–42 (quoting *Pineda v. City of Houston,* 291 F.3d 325, 328 (5th Cir. 2002)).

Here, Wright has not alleged any facts in support of a finding that Pelletier is a final decision maker or policy maker within the East Baton Rouge Sheriff's Office. Accordingly, Wright's "official capacity" claim against Pelletier, to the extent one is asserted, is subject to dismissal. *See Jackson v. Gautreaux*, No. 19-149, 2022 WL 717079, at *5 (M.D. La. Mar. 9, 2022) ("Plaintiff does not allege that Landry is a final decision maker or policy maker for the East Baton Rouge Sheriff's Office. The Court agrees. Plaintiff does not address or rebut this argument whatsoever; accordingly, the official capacity § 1983 claims against Deputy Landry will be dismissed.").

As discussed above, the Court construes the Complaint as solely raising an "individual capacity" claim against Pelletier. Given Wright has not set forth any argument in opposition that Pelletier is a final decision maker or policy maker within the East Baton Rouge Sheriff's Office, the Court will dismiss any "official capacity" claim with prejudice.

### C.    Defendant's Motion to Stay Discovery (R. Doc. 12)

Rule 26(c) of the Federal Rules of Civil Procedure allows the court to issue a protective order after a showing of good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc,* 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garret,* 571 F.2d 302, 3026 (5th Cir. 1990) (citation omitted).

"Trial courts possess broad discretion to supervise discovery." *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 436 n.114 (5th Cir. 1990) (citation omitted). "A trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987).

"The qualified immunity defense affords government officials not just immunity from liability, but immunity from suit." *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 525-26 (1985)). Qualified immunity shields government officials from individual liability for performing discretionary functions unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The Fifth Circuit has clarified that all discovery involving a defendant raising the defense of qualified immunity in a motion to dismiss must be stayed until resolution of the defense of qualified immunity:

> The Supreme Court has now made clear that a plaintiff asserting constitutional claims against an officer claiming [qualified immunity] must survive the motion to dismiss without *any* discovery.

*Carswell v. Camp*, 54 F.4th 307, 311 (5th Cir. 2022). In *Carswell*, the Fifth Circuit concluded that a district court abused its discretion by deferring its ruling on a motion to dismiss on qualified immunity grounds and subjecting the public official defendants to discovery on the plaintiff's *Monell* claims, which created an undue burden in light of increased litigation costs and complications caused by bifurcated discovery. *Id*. at 310-314. The Fifth Circuit expressly held that the required stay of discovery is not limited to claims to which the defense of qualified immunity is raised. *Id*.

In so ruling, the Fifth Circuit highlighted the Supreme Court's concerns about the burdens of litigation imposed on public officials. It also noted that these same burdens would be

present if the Court allowed discovery to proceed against defendants in different capacities or

against co-defendants that make no claim for qualified immunity:

> It is no answer to these concerns to say that discovery for petitioners can be
> deferred while pretrial proceedings continue for other defendants. It is quite likely
> that, when discovery as to the other parties proceeds, it would prove necessary for
> petitioners and their counsel to participate in the process to ensure the case does
> not develop in a misleading or slanted way that causes prejudice to their position.
> Even if petitioners are not yet themselves subject to discovery orders, then, they
> would not be free from the burdens of discovery.

*Id*. at 313 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 685-86 (2009)). "In other words, the Court

ruled out even 'minimally intrusive discovery' against official defendants before a ruling that

plaintiff had met his burden to overcome the qualified immunity defense at the pleading

stage." *Carswell*, 54 F.4th at 313 (quoting *Iqbal*, 556 U.S. at 686).

    As discussed above, the Court has denied Pelletier's qualified immunity defense based

solely on the allegations in the complaint. A stay of discovery is not warranted at this time.

### D.    Plaintiff's Motion for Discovery of Evidence (R. Doc. 11) and Plaintiff's Motion for Leave to File Exhibit Conventionally (R. Doc. 13)

    Wright's Motion for Discovery of Evidence (R. Doc. 11) and Motion for Leave to File

Exhibit Conventionally (R. Doc. 13) seek entry into the record of certain photographs and videos

pertaining to the underlying incident. The Court finds no basis, however, for entering these

photographs and videos into the record at this time.

    Wright may produce these photographs and videos in discovery as part of his initial

disclosures or to the extent responsive to any discovery requests. The Court will not, however,

enter this discovery into the record until they are to be used in this proceeding. *See* Fed. R. Civ.

5(d)(1)(A) ("[D]isclosures under Rule 26(a)(1) or (2) and the following discovery requests and

responses must not be filed until they are used in the proceeding or the court orders filing:

depositions, interrogatories, requests for documents or tangible things or to permit entry onto

land, and requests for admission."). To be clear, nothing in this Order precludes Wright from

seeking to admit into the record, in the context of opposing or supporting a Rule 56 motion or at trial, the photographs and videos at issue.

Given that Plaintiff is not seeking to amend the Complaint with the instant photographs and videos as attachments, the Court need not reach the issue of whether they would constitute appropriate extensions of a pleading. Rule 10(c) provides, in relevant part, that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Plaintiff has not set forth any basis for concluding that the submitted photographs or videos should be deemed "written instruments" for the purposes of establishing that they can be part of the pleadings for all purposes. *See Rivera v. Robinson*, No. 18-14005, 2019 WL 1326588, at *3 (E.D. La. Mar. 25, 2019) (holding that photographs and videos attached to complaint "do not form the basis of plaintiffs' claim, but rather are intended as evidence to support the allegations of the complaint[.]"); *but see Spoon v. Bayou Bridge Pipeline, LLC*, 335 F.R.D. 468, 474 (M.D. La. 2020) (refusing to strike photographs incorporated into the complaint in the absence of prejudice and confusion).

## III.    Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion to Dismiss (R. Doc. 7) is **GRANTED IN PART and DENIED IN PART**. Plaintiff's claims brought against Defendant in his official capacity are **DISMISSED WITH PREJUDICE**. Plaintiff may proceed on his claims for false arrest/false imprisonment and excessive force under the Fourth Amendment as discussed above.

**IT IS FURTHER ORDERED** that Defendant's Motion to Stay Discovery (R. Doc. 12) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Discovery of Evidence (R. Doc. 11) and Plaintiff's Motion for Leave to File Exhibit Conventionally (R. Doc. 13) are **DENIED**. Plaintiff may produce these documents to Defendant in discovery.

Signed in Baton Rouge, Louisiana, on October 24, 2024.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**